## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBORAH LAUFER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 2:20-cv-1188 |
| TRIBHUVAN REAL ESTATE L.P., | ) |
| | ) |
| Defendant, | ) |
| | ) |
| HOTELS AND STUFF INC., | ) |
| | ) |
| Movant-Interested Party and | ) |
| Amicus Curiae. | ) |

## BRIEF *AMICUS CURIAE* IN OPPOSITION TO MOTION FOR DEFAULT JUDGMENT

Hotels and Stuff Inc., by and through its undersigned counsel, submits this Brief *Amicus Curiae*, to address certain jurisdictional defects in the present barrage of 700+ identical nationwide lawsuits:

### I. Background of the Lawsuits

Presently before the United States District Court for the Western District of Pennsylvania are about ten identical lawsuits, some that already improperly resulted in settlement extractions without class certification or notification. Nationwide, over 700 lawsuits were filed by four possibly nominee plaintiffs. Each lawsuit improperly includes psuedo-class action averments purporting in several places of the Complaint, including the first paragraph, to be filed on behalf of plaintiff and all others similarly situated. The necessary Rule 23

states are never included and notice to the class members do not occur.  Rather, the

suits are settled and compromised in violation of Rule 23(e) without notice to the

class in exchange for a payment to the attorneys and an agreement to bring websites

belonging to someone else into compliance.

## II. <u>What are the Lawsuits About?</u>

Despite the vague boilerplate contained in every lawsuit, the allegations

are simple.  Plaintiff's counsel alleges that, despite never intending to stay at the

hotels in question, defendant maintains reservation systems that do not enable a

disabled person to be apprised as to whether the rooms meet their needs. Plaintiff

asserts that this violates a regulation promulgated by the United States Department

of Justice.  As a result, the plaintiffs claim they may sue for injunctive relief and, if

they prevail, petition for attorney fees – lots of attorney fees.

The reality is that the 700+ lawsuits mostly do not involve hotel websites

or hotel reservation systems.  On the contrary, the boilerplate lawsuits refer to

websites all owned by multi-billion dollar booking search engines Expedia[1] or

Booking.  A review of the plaintiff's agreement with Expedia Group reveals that

plaintiff is Expedia's customer and the hotels are merely subcontractors.  *See*

Exhibit 1.  The agreement provides that plaintiff will use the search engines only for

the purpose of actually making hotel reservations (not searching for hotels to sue).

Finally, the agreement provides that any disputes must be submitted to Expedia

---

1   Expedia Group controls expedia.com, hotels.com, orbtiz.com travelocity.com, hotwire.com, tripadvisor.com, and most
    other websites sited in the lawsuits.  Booking Group controls agoda.com, booking.com, kayak.com, priceline.com, and
    others.  None of the search engines are owned by the defendant hotel.

Group for resolution and then, if no solution can be found, submitted to binding arbitration.

### III.   <u>What Are These Lawsuits Really About?</u>

"[I]t appears that [Laufer] and her attorney's sole intent in this litigation is to bully the Defendant into handing over as much money as possible, completely without a relationship with the business." *Laufer v. Mann Hospitality,* 20-cv-620 (W.D.Tx. Sept. 30, 2020); Exhibit 2.  Indeed, when a hotel appears in the action, a prompt settlement demand for $10,000 for a full release or $6,500 for a partial release is promptly emailed.  *See* Exhibit 3.[2]  The result is millions of dollars in extracted legal fees for cookie-cutter lawsuits from a plaintiff that never intended to visit the hotels.

### IV. <u>Courts are *Sua Sponte* Raising Jurisdictional Questions</u>

Many hotels cannot afford to defend the lawsuits and simply default. After all, counsel for the Plaintiff bills at $400 plus per hour. It takes him three hours to prepare the same identical complaint, two hours to prepare a boiler plate Clerk's Default request, and three hours to make his motion for attorney fees (see Exhibit 4).   Challenging just increases the liability and costs for an issue that could have been easily resolved.  As courts notice deficiencies and require correction, counsel performs the fixes caused through his own deficiencies at $400 an hour ultimately taxed on the defendant that could not afford to defend.  *Id.*

Perplexed by the sheer impossibility of the group of plaintiff's planned

---

2   Exhibit 3 is a settlement demand in a state that allows for $1000 statutory damages for ADA violations.  In states such as Pennsylvania, the demand omits the request for fees for the Plaintiff.

travel to over 700 hotels in about 7 months, *sua sponte* questions of standing are being raised.  In the Western District of Texas, the Court rendered a standing Order requiring justification of plaintiffs' standing.  *See* Exhibit 5.  Similarly, the Northern District of New York required similar submissions in multiple cases.  *See* Exhibit 6. Similarly, in *Laufer v. Lily Pond LLC C Series*, 3:2020-cv-0617 (W.D.Wisc.), Docket Entry 9 (September 3, 2020), the Court noted in a text Order that, "Plaintiff has filed substantially similar complaints in 20 other cases in this court in the past two months" and that  "this court is requiring plaintiff to show cause why her complaint should not be dismissed for lack of standing."

Standing is not the only serious jurisdictional defect in the present lawsuit.  Therefore, this Court may wish, prior to granting a default judgment, consider these other serious issues.

### V. All 700+ Lawsuits Are Class Actions and Must be Regulated by the Court

All 700 plus lawsuits filed by the four nominee plaintiffs through the Thomas B. Bacon law firm state that they are filed on behalf of the plaintiff and those similarly situated.  This language is contained in both the first paragraph and in the body of the lawsuit.  However, none of the requirements of Federal Rule of Civil Procedure 23 are complied with.  Most egregiously, counsel's routine demand to settle the lawsuits for $10,000 and providing defendant two years to comply with the regulation brazenly contravenes Rule 23(e) and its notice and review requirements. Notice is never provided to those "similarly situated" and the courts never receive an

opportunity to determine if Plaintiff adequately represents the interests of the class. The procedures for class action settlement—including the notice procedures—must comply with due process requirements. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 435 (3d Cir. 2016).  Presently, class action cases on behalf of plaintiff and those "similar situated" are being settled, dismissed, withdrawn, and compromised by default judgment without notice to the absent class members.  The interests of class representatives or class counsel do not always align with the interests of absent class members, and prior to certification class members may not know their claims are in litigation or that settlement negotiations are taking place. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 788 (3d Cir. 1995).  Therefore, this Court needs to take control.

Amicus Hotels and Stuff suggests that the Thomas B. Bacon/Tristan Gillespie firm should not be lead counsel appointed under Rule 23 representing the class because their sole interest is to increase attorney fees and enrich themselves. The firm unnecessarily increases the cost of litigation.  28 USC 1927.  First, filing 700 lawsuits that could have been resolved with one or two lawsuits naming Expedia and Booking would have saved millions of dollars for the judicial economy.  Second, being reckless with litigation costs such as paying $130 to $190 to serve defendants (Exhibits 7 and 8) when they could seek waivers of summonses  saving nearly $100,000 in costs in just seven months.   Certainly, no emergency exists in these lawsuits for service at a cost between $130 and $190 – costs counsel tries to tax on the defendant.

More disturbing is counsel's accepting settlement money to compromise the litigation without court approval in contravention of Rule 23(e).  While counsel does not call the lawsuits "class actions," any suit on behalf of others similarly situated certainly are class actions.

This Rule 23 problem is jurisdictional in nature as the courts are not granted authority to compromise a litigation filed on behalf of unnamed persons "similarly situated" as stated in the Complaint without notice.  This Court must direct counsel to notify all those "similarly situated" through advertising to determine if dismissal, settlement, or the relief sought is appropriate.  The Court cannot simply issue a default judgment and injunction, award counsel another windfall, and then go away.   Rule 23(e) must be strictly complied with in all 700 lawsuits.

## VI.  <u>This Court Lacks Jurisdiction Until Expedia and Booking Are Joined</u>

700 lawsuits about the same websites necessarily means that the relief granted in the settlements and default orders obviously did not end the controversy.  This is because the lawsuits involve search engines owned by Expedia Group and Booking Group, not the defendants.  This means that Plaintiff will be filing as many lawsuits as they are physically able to do without any of them ever being resolved because Expedia and Booking are never a party to the settlement or injunction.

"[I]t appears that Hotels.com, L.P., a third-party lodging booking service, is the entity responsible for the Website."  *Strojnik v. Kapalua Land Co.,* 19-cv-00077

(D. Hawaii, Aug. 26, 2019)(Exhibit 9).  Indeed, the agreement between plaintiff and

Expedia Group, Exhibit 1, controls the lawsuit.

Under Fed. R. Civ. Proc. 19(a), Expedia and Booking are required

parties.  Specifically, the demanded injunction the content of the search engines

operated by these conglomerates.  This Court cannot "accord complete relief among

existing parties" considering that the injunction would alter Expedia and

Booking.com's websites, not websites controlled by the defendant.  Ordering an

alteration to Expedia and Booking websites would "impair and impede" the rights of

those companies to protect their interest.  Moreover, if Expedia and Booking will not

alter their websites based on a decision that they were not a party to, it may leave

the small hotel defendants at "a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations."

Not only are Expedia and Booking "necessary" under Rule 19(a), they

are "indispensable" under *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 640

(3d Cir. 1998).  This Court must ask first, to what extent a judgment rendered in the

person's absence might be prejudicial to the person or those already parties.

Certainly, since the defendant hotel does not control the search engines, the absence

of Expedia and Booking severely impede their abilities to comply with any direction.

Moreover, plaintiff should want to add Expedia and Booking because they could fix

the problems listed in all 700+ lawsuits immediately, eliminating this non-stop

cookie-cutter litigation.  Similarly,  the "shaping of relief" can be lessened and

avoided as Expedia and Booking's vast compliance department will quickly comply

with any federal law violations.  Finally, a judgment rendered without Expedia and Booking would not be adequate considering that they own the websites, not the defendant hotels named in these myriad cases.

Therefore, this Court must join Expedia and Booking.com to properly adjudicate this case.  Joining them would not destroy this Court's jurisdiction.  If plaintiffs refuse to allow them to be joined, the remedy would be to dismiss the actions.

## VII.    Plaintiff Maintains No Standing

Plaintiff never alleges she actually considered staying in the lodging establishments in these cases.  Rather, it appears that nominee plaintiffs are utilized to access the same Expedia and Booking search engines, over and over, to locate listings of small hotels that do not clearly show compliant facilities resulting in over 700 lawsuits filed as "testers."[3]

Amicus Hotels and Stuff does not suggest that "testers" maintain no standing, and court decisions hold that they do maintain standing if they maintain an actual injury. Plaintiff is not, however, excused from establishing Article III standing, which requires her to establish that she suffered "an injury-in-fact, that the injury is traceable to the [defendant's] actions, and that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).   Status as a tester neither eliminates standing nor confers

---

3   As the ADA provides for no money damages, and counsel cannot ethically share legal fees with the testers.  While the testers can receive statutory damages in some states, most states do not have such a provision.  Hotels and Stuff is presently investigating whether an improper incentive is being provided considering that, unlike many other ADA cases, no *bona fide* disabilities rights organization is backing these suits.

it.  *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 374-75 (1982).

However, there can be no injury from not seeing handicapped accommodations that may or may not exist at a hotel that Plaintiff had no desire to stay at.  It is similar to *Carello v. Aurora Policemen Credit Union*, 930 F3d 830 (7th Cir. 2019) and *Griffin v. Dep't of Labor Fed. Credit Union,*912 F.3d 649 (4th Cir. 2019) where standing was denied to a person who claimed the credit union's website was not accessible, but since the person was not eligible for membership, no damage occurred.  In these hotel cases, the person can access the site and purchase a hotel room, but they claim they could not determine if handicapped facilities exist.  However, this does not damage the plaintiffs since they never intended to stay at the hotel in question or to reserve the disabled person accommodation, period.  While Plaintiff "could" stay at the hotel, unlike the credit union cases, she never intended or planned to stay, making the damage nothing but conjectural.

The only remedy available under the ADA is injunctive relief, so one of the requirements of which is that a plaintiff show a "real and immediate" threat of injury.  *City of Los Angeles v. Lyons,* 461 U.S. 95, 104 (1983).  Past exposure to illegal conduct does not present a present case or controversy regarding injunctive relief.  *Brown v. Fauver,* 819 F.2d 395, 400 (3d Cir. 1987).  Plans "some day" to become exposed to harm has been held not to be the real and immediate threat that establishes standing. *Id.*  The Third Circuit Court of Appeals has held that these principles apply to  the ADA. *Id.; Doe v. Nat'l Bd. Of Medical Examiners*, 199 F.3d 146, 153 (3d Cir. 1999).

Prior to counsel starting its 2020 barrage of lawsuits, other similar cases were filed and the district courts found no standing.  For example, in the *Strojnik v. Kapalua Land Co.,* 19-cv-00077 (D. Hawaii, Aug. 26, 2019)(Exhibit 9) case, the court provided a clear explanation as to why these cases must fail for standing and because the websites belong to Expedia.  In *Hernandez v. Caesers License*, 19-cv-06090 (D. N.J. October 4, 2019)(Exhibit 10), the Court found no standing in an identical suit where no intention to stay at the hotel existed and the Plaintiff could access the website in question.  Notably, the *Caesers License* case website was operated by the defendant, not by a multi-billion dollar third-party as in this case.

As to plaintiff's lawsuits, other courts are strictly requiring a plaintiff to maintain an intent to actually stay at the property.  *Laufer v. Mann Hospitality,* 20-cv-620 (W.D.Tx. Sept. 30, 2020)(Exhibit 2).   Amicus Hotels and Stuff respectfully believes that there must be a *bona fide* intent to consider staying at the hotel if it had the information enabling the plaintiff to make the decision.  In this regard, the Court can look at plaintiff's 500 lawsuits in her name and know that, unless she was a prolific traveler, there existed no *bona fide* intent.

Plaintiff cannot logically suggest she seriously considered staying at hundreds of hotels in the lawsuits where she is a plaintiff.  Therefore, she lacks standing to bring this lawsuit and the Court maintains no jurisdiction due to a lack of "concrete *and* particularized." damage. *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S.Ct. 1540, 1548 (2016).[4]

---

4    *Spokeo* is a non-ADA case.  Unlike the ADA, the statute allowed for damages to be sought.  Amicus suggests that in ADA cases, with no damage awards, the plaintiff's standing requirement is more onerous as she cannot sue solely for past injury,

VIII.  <u>**Conclusion**</u>

The above jurisdictional issues should cause this Court to serious

consider a *sua sponte* review of whether it can properly render a default judgment in

this case considering the grave jurisdictional defects and failure to comply with Fed.

R. Civ. Proc. 23.

Respectfully submitted,

HOTELS AND STUFF INC.

*/s/ J. Allen Roth, Esq.*
J. Allen Roth, Esq.
757 Lloyd Ave, Suite B
Latrobe, PA  15650
(724) 537-0939 Phone
lawmatters@yahoo.com

COUNSEL FOR *AMICUS CURIAE*

**CERTIFICATE OF SERVICE**

I, J. Allen Roth, certify that all appearing counsel are members of this Court's
ECF system and will receive electronic notice upon filing of this document.  In
addition, on October 25, 2020, I mailed a true copy of the foregoing to:

TRIBHUVAN REAL ESTATE LP
c/o Bharat B Patel
1001 Rowena Dr.
Ebensburg PA 15931

*/s/ J. Allen Roth*
J. Allen Roth Esq.

---

but has to show a future injury as well.